# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YOMARE POLANCO,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 22-2598** |
| | : | |
| **DOMINICAN REPUBLIC, et al.** | : | |

**McHUGH, J.**                                                                                                  **December 11, 2023**

## MEMORANDUM

Plaintiff Yomare Polanco brought this action against numerous entities and individuals associated with the Dominican Republic, its government, and a major political party – the Dominican Liberation Party (PLD)[1]. Am. Compl. ¶¶ 11-46 (ECF 5). Mr. Polanco, someone deeply involved in Dominican politics himself, alleges that "[t]he Defendants, including the Dominican Republic itself, constitute a criminal enterprise . . . . [that] exists for the sole purpose of bribing [Dominican] election officials." *Id.* at 8. For relief, aside from damages, Mr. Polanco boldly requests that I "permanently" enjoin the Dominican Republic "from ever holding funding or advertising an election within [a] U.S. jurisdiction." *Id.* ¶ A. Not surprisingly, several defendants have moved to dismiss invoking *forum non conveniens*.[2]

Regardless of how Plaintiff may seek to characterize his case, at its core is a foreign government's conduct in administering its elections. The Dominican Republic itself is a party, and every individual defendant a Dominican citizen. Necessarily, the Dominican Republic is the appropriate forum to litigate these claims, because even the individual claims are inextricably

---

[1] The acronym "PLD" is after the Spanish name of the political party, Partido de la Liberación Dominicana.

[2] This case was re-assigned to my docket on July 11, 2023, following the retirement of another judge. *See* ECF 110.

linked to Dominican elections and politics. And no party has made any allegations of corruption related to the ability of the Dominican Republic court systems to adjudicate these claims fairly. I conclude that this case is centered in the Dominican Republic, a conclusion underscored by Plaintiff's prayer for equitable relief, a request that this Court intervene in how another nation runs its elections. I will therefore grant Defendants' motions to dismiss this entire action on *forum non conveniens* grounds.

I.  **Relevant Background**

   a.  **The Parties**

Mr. Polanco is a Dominican-born citizen of the United States residing in Pennsylvania. Am. Compl. ¶ 11. He brought suit against thirty-seven separate defendants, alleging that they all acted in concert to further a conspiracy to rig the 2020 Dominican election that occurred on U.S. soil.[3]  *Id.* ¶¶ 12-78. Because of the number of defendants and the three motions to dismiss submitted in this case, each making differing arguments, I begin by describing the various parties. The defendants include the Dominican Republic itself, the Consulate of the Dominican Republic, the Central Electoral Board of the Dominican Republic (CEB)[4] – an independent governmental agency that oversees Dominican elections – several former Dominican government officials in charge of coordinating overseas Dominican elections, the PLD and its U.S.-based equivalent, and

---

[3] As discussed below, the Dominican Republic holds in-person elections overseas for Dominican citizens living in other countries to elect several representatives to sit in the Dominican Chamber of Deputies and represent Dominican citizens living abroad.

[4] The parties sometimes refer to CEB by its Spanish name, Junta Central de la República Dominicana, or the acronym "JCE," but predominantly refer to the agency as "CEB," as I have done throughout.

a number of individual representatives of the PLD in the United States. *Id.* ¶¶ 12-46. All the individual defendants are citizens of the Dominican Republic.[5] Am. Compl. ¶¶ 16-46.

Some Defendants are separately represented by four different law firms, while others remain unrepresented.

### 1) Dominican Republic Defendants

The first group represented by the same counsel consists of the Dominican Republic, the Consulate of the Dominican Republic, and two former government officials in charge of coordinating overseas Dominican elections in New Jersey – Sara Lina Machado and Fernando Nuñez. *See* Dom. Rep. Mot. Dismiss (ECF 123); Am. Compl. ¶¶ 12, 19-20.

### 2) Central Electoral Board (CEB)

The second is a "group" of one – the Central Electoral Board of the Dominican Republic – which is separately represented. *See* CEB Mot. Dismiss (ECF 100); Am. Compl. ¶ 13.

### 3) Aquino Defendants

The third group consists of twenty individuals: sixteen representatives of the PLD in the United States[6]; Yohanna Leonidas Tineo Estevez and Sublime Larancuent, two former

---

[5] Mr. Polanco identifies each defendant in Section III of the Amended Complaint, listing each individual as a Dominican citizen. No defendants contest this. Later in the Complaint, Plaintiff refers to three other Defendants but does not mention their citizenship: Francisco Cruz, Frank Cortorreal, and Manuel Emilio Galvan. Am. Compl. ¶ 58. Given the nature of the allegations, and my review of the record as to who is eligible to participate in the Dominican electoral system, their participation would also require citizenship. Plaintiff also lists Felix Martinez twice, *see id.* ¶¶ 26 & 34, and Wilson Diaz twice, *see id.* ¶¶ 29 & 46.

Plaintiff has also submitted various summaries of service of all Defendants, providing some insight into residency as well as citizenship of Defendants, often listing U.S.-based addresses, some of which appear to be residential, and others appear to be the offices of PLD in Miami, Florida or the Consulate General of the Dominican Republic in New York City. *See, e.g.*, May 2023 Updated Serv. Chart of Defs., ECF 103. At least two individuals were served in the Dominican Republic. *Id.*; Mar. 27, 2023 Summons, ECF 99.

[6] Juan Aquino; Antonio Ayala; Francisco Cruz; Wilson Diaz; Francisco Fernandez; Lourdes Fernandez; Pedro Gonzales; Ana Gratereaux; Alexis Lantigua; Luis Lithgow; Pablo Lopez; Felix Antonio Martinez; Marcos Montilla; Jose Mota; Rafael Peña; and Emiliano Perez.

3

government officials coordinating overseas Dominican elections in New Jersey and Washington, DC respectively; Frank Cortorreal, the President of the New York branch of the PLD; and Carlos Castillo, a former Consul to the Dominican Republic in the United States. *See* Aquino Mot. Dismiss (ECF 122); Am. Compl. ¶¶ 18, 22, 24-30, 32-37, 39, 41-42, 45-46, 58.

### 4) PLD Defendants

The fourth group includes the Dominican Liberation Party (PLD) itself; its U.S.-based affiliate, Partido de la Liberación Dominicana PLD Group, Inc.; Temistocles Montas, a former president of the PLD; and three representatives of the PLD in the United States[7]. *See* Mar. 2, 2023 Letter (ECF 74); Mar. 6, 2023 Notice Appear. (ECF 79); Am. Compl. ¶¶ 14-15, 23, 31, 43, 58.

### 5) Unrepresented Defendants

Finally, there are six individual defendants that are not represented and have not responded to date: Gilberto Cruz Herasme, the former overseer of Dominican elections abroad; Gisela Almonte,[8] a former coordinator of overseas Dominican elections in Pennsylvania; Julio Cesar Castaños Guzman, former CEB President; and three representatives for the PLD in the United States[9]. Am. Compl. ¶¶ 16-17, 21, 38, 40, 44.

### b. Procedural Background

Dominican Republic Defendants, CEB, and the Aquino Defendants have each filed a motion to dismiss. *See* Dom. Rep. Mot. Dismiss; CEB Mot. Dismiss; Aquino Mot. Dismiss. Dominican Republic Defendants and CEB raise *forum non conveniens* (FNC) as grounds for dismissal. The Aquino Defendants do not formally invoke FNC but argue that this is an

---

[7] Gonzalo Castillo, Manuel Emilio Galvan, and Eduardo Selman.

[8] Plaintiff has indicated that Gisela Almonte is deceased. *See* May 2023 Updated Serv. Chart 4.

[9] Jesus Casanova, Miriam Marmolejo, and Josefina Suero.

inappropriate forum under the state action doctrine. The PLD Defendants have not moved to dismiss but have asserted *forum non conveniens* as an affirmative defense in their answer. PLD Defs.' Answer, ECF 134 at 16. For practical purposes, therefore, all the participating, represented parties dispute that this is the appropriate forum.

### c. Factual Background

Following a constitutional amendment in 2010, the Dominican Republic holds elections for seven representatives to the Chamber of Deputies to represent Dominican citizens living abroad. Am. Compl. ¶ 48; Pl. Resp. in Opp. to CEB Mot., Ex. 1 Dom. Rep. Const. art. 81 (ECF 106-2). The Dominican Republic, through CEB, conducts these overseas elections in the United States on U.S. soil, not in consulate spaces. Am. Compl. ¶¶ 49-51; CEB Ex. A Dom. Rep. Const. art. 211 (ECF 100-3). This case concerns the 2020 overseas election for the "First District," which includes New York, Massachusetts, Rhode Island, New Jersey, Pennsylvania, Washington, D.C., and Connecticut. *See* Am. Compl. ¶ 52; CEB Ex. C Law No. 136-11, arts. 10, 12(1), 13 (ECF 100-5); CEB First Medina Decl. ¶ 6 (ECF 100-2). Specifically, Plaintiff Yomare Polanco alleges that he is a victim of a bribery scheme carried out over a decade by all thirty-seven Defendants acting in concert, resulting in election fraud for the 2020 overseas Dominican elections for the First District seat, for which Mr. Polanco was running. Am. Compl. at 8.

As to his purported victimization, the facts are hardly edifying but offered without apology. According to Mr. Polanco, he donated between 3.5 and 4 million dollars to the PLD, including through multiple direct checks to PLD employees totaling $300,000. *Id.* ¶ 62. Mr. Polanco states that he donated this money because PLD approached him "with promises of power and influence if he supported their operations in the United States. . . . including the idea that he would eventually become an elected official." *Id.* ¶ 54. Mr. Polanco further asserts that he contributed this money

because the PLD explicitly "promised that if [he] provided significant financial contributions to the PLD to fund its political campaigns, he would be given a seat in the Chamber of Deputies." *Id.* ¶¶ 55. In addition, Mr. Polanco was allegedly promised "a direct line of communication to the executive branch of government and the possibility of recouping his financial contribution to the PLD through business opportunities that, otherwise, would not be available to him." *Id.* ¶¶ 56. Pursuant to these promises, Mr. Polanco ran for a seat in the Chamber of Deputies in the First District as part of the PLD political party in 2020 and "spent a considerable amount of his own money." *Id.* ¶¶ 65, 67.

Mr. Polanco alleges that instead of using his "financial contributions" to aid his campaign and other campaigns he supported, PLD "embezzled and [] used [his contributions] in 2012, 2016, and 2020 Dominican Republic elections on American soil to bribe election officials and others." *Id.* ¶¶ 59, 64. He goes on to contend that Defendants "set up an enterprise to bribe election officials and those designated to count . . . ballots" and "to persuade voters, by false pretenses, to vote against Plaintiff and . . . the candidates he had endorsed." *Id.* ¶¶ 69-70. Polanco notes that despite the efforts of Defendants to prevent him and those he supported from being elected, the 2020 election "ballots revealed that [Polanco], and many of his endorsed candidates, had won a majority." *Id.* ¶ 71. He claims that he was not named the winner of the 2020 election, however, because Defendants orchestrated a conspiracy "to steal the ballots cast for Plaintiff in the various precincts where [Polanco] had received the most votes and systematically torched them before any ballot could be officially recounted."[10] *Id.* ¶ 73.

---

[10] Plaintiff asserts that Defendants Dominican Republic, CEB, and the PLD "publicly admitted" the bribery and "all events leading up to and including the torching of the ballots," but cites no source for the allegation. Am. Compl. ¶ 75. Separately, he pleads an ongoing criminal investigation by Dominican authorities into the 2020 election. *Id.* ¶ 76.

Mr. Polanco alleges a racketeering enterprise under 18 U.S.C. § 1964(c), and fraudulent misrepresentation, concealment, and inducement. His prayer for relief requests that the Dominican Republic be enjoined "from ever holding funding or advertising an election within [a] U.S. jurisdiction." *Id.* ¶ A.

## II.     Standard

Moving Defendants raise multiple grounds for dismissal, but this case is readily resolved on the basis of one: *forum non conveniens*. FNC is a discretionary tool that empowers federal courts to dismiss an entire action when "a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). When deciding a motion to dismiss that is based on FNC and other grounds, courts have "discretion to respond at once to a defendant's [FNC] plea." *Id.* In this case, FNC considerations "weigh heavily in favor of dismissal." *Id.* at 436. I therefore "take[] the less burdensome course" and dismiss on FNC grounds alone. *Id.*

Motions to dismiss based on FNC should be decided "at an early stage in the litigation, so that the parties will not waste resources on discovery and trial preparation in a forum that will later decline to exercise its jurisdiction over the case." *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir. 1991). Of necessity, in performing an FNC analysis, the court "generally becomes entangled in the merits," often considering "the locus of the alleged culpable conduct," to the extent required to "scrutinize the substance of the dispute." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). But this "does not call for a detailed development of the entire case" or "require extensive investigation." *Lony*, 935 F.2d at 614 (citations omitted). Instead, the court may rely on the parties' affidavits and other evidence presented. *Id.*

To decide whether FNC dismissal is appropriate, district courts engage in a three-step analysis. First, the court must determine "whether an adequate alternate forum" exists to entertain the case. *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 160 (3d Cir. 2010). Second, if an adequate alternate forum exists the court must determine "the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* Finally, the court must weigh "the relevant public and private interest factors" to determine whether, on balance, "trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience." *Id.* If so, or if the chosen forum is "'inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case" on FNC grounds. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). Defendants seeking dismissal based on FNC bear the burden of persuasion at every stage of this analysis. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988). The defendants' burden of persuasion must be evaluated against the backdrop of a generally "strong presumption" in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

**III.    Discussion**

Through the various motions to dismiss, supplemental filings, and declarations, Defendants have satisfied their burden to show that an adequate alternative forum exists, and that the relevant public and private interests outweigh the deference owed to Mr. Polanco's choice of forum.

### a. Adequacy of the Dominican Republic Court System

The adequacy of an alternative forum is determined by a defendant's amenability to process in that forum and a plaintiff's opportunity for redress there. If there is no adequate alternative

forum, FNC dismissal is not appropriate. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1225-26 (3d Cir. 1995). The Supreme Court observed that foreign courts are rarely inadequate, *Piper*, 454 U.S. at 254, and federal courts consistently find the Dominican Republic to be an adequate alternate forum, granting FNC dismissal in a variety of cases.[11]

### 1) The Potential for Jurisdiction over Defendants in the Dominican Republic

An alternate forum exists if defendants are amenable to suit in the new forum. *Piper*, 454 U.S. at 255, n.22. Defendants are considered amenable to suit in a new forum when they are either "amenable to service of process" in the foreign country or consent to jurisdiction there. *Eurofins*, 623 F.3d at 160.

Here, as CEB and Dominican Republic Defendants point out, it is "axiomatic" that they are amenable to suit in the Dominican Republic because they are a government agency, former

---

[11] *See, e.g., Jones v. FC USA, Inc.*, No. 17-1126, 2017 WL 5453497, at *2 (E.D. Pa. Nov. 14, 2017) (DuBois, J.) (granting FNC in a negligence suit in which the Court found the Dominican Republic to be an adequate alternate forum in part because it "is a democratic nation with an independent three-tiered judicial system providing for appellate review"); *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 567-68 (D.P.R. 1996) (finding the Dominican Republic courts to be an adequate forum despite allegations of corruption because "it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation") (internal citations omitted); *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 532 (S.D.N.Y. 2006) (finding Dominican Republic courts to be an adequate alternate forum for breach of fiduciary duty, conversion of trust funds, malicious interference with contractual agreements, improper accounting, and refusal to deliver title documents claims); *Nader v. Diaz*, No. 06-06501, 2007 WL 9711175, at *4 (E.D.N.Y. May 12, 2007) (finding the Dominican Republic to be an adequate alternative forum for a breach of contracts claim); *Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 Fed. App'x 826, 830 (11th Cir. 2013) (same); *Goldstein v. Hard Rock Cafe Int'l (USA), Inc.*, 519 Fed. Appx. 653, 654-55 (11th Cir. 2013) (same for a negligence personal injury claim); *La Fontaine v. Signature Rsch., Inc.*, No. 14-24028, 2016 WL 880527, *2-3 (S.D. Fla. Mar. 8, 2016) (same); *Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008) (same); *Dominguez v. Pyrgia Shipping Corp.*, No. 98-529, 1999 WL 438477, at *2-3 (E.D. La. June 28, 1999) (same for workplace injury claim).

government representatives[12], and the Dominican Republic itself. [13] *See* Dom. Rep. Mot. Dismiss 30; CEB Mot. Dismiss 18; *see also* CEB Ex. D, Law No. 107-13 (ECF 100-6) *and* First Medina Decl. ¶¶ 14-18 (discussing the relevant laws in the Dominican Republic that allow an individual to seek legal action against the government and its representatives for engaging in illegal conduct). It is also self-evident that the PLD, a major Dominican Republic political party, is amenable to suit in Dominican courts and in fact have availed themselves of the Dominican judicial system on this very issue.[14] Thus, I find that moving Defendants have met their burden of persuasion that the CEB, Dominican Republic Defendants, the PLD, and the five additional former government representatives[15] are amenable to suit in the Dominican Republic. As to the remaining individual defendants,[16] CEB argues that because all the defendants are Dominican citizens, they are

---

[12] In addition to the two former government representatives who are part of the Dominican Republic Defendants, there are five other government representatives that would similarly be subject to suit under the relevant Dominican Republic laws because of their role as government agents. These defendants are two individuals represented as part of the Aquino Defendants, Yohanna Leonidas Tineo Estevez and Sublime Larancuent, and three individuals who are unrepresented, Gilberto Cruz Herasme, Julio Cesar Castaños Guzman, and Gisela Almonte. *See supra* note 8 (noting that Gisela Almonte is likely deceased).

[13] Mr. Polanco also argues that the Dominican Republic "explicitly waived jurisdiction in favor of the United States" and thus is not amenable to suit in the Dominican Republic. Pl. Resp. in Opp. to CEB Mot. 12 (ECF 106). He bases this assertion on several affidavits from individuals attesting that the Dominican Republic asked the United States for permission to carry out its overseas elections on American territory. *See id.*, Exs. 2-5 (ECF 106-3 – 106-6). This argument has little merit. A foreign country can hardly be deemed to have waived its amenability to suit in its own courts merely by requesting cooperation from another country in an informal letter to help with its overseas elections. Moreover, the affidavits and supplemental letters supplied demonstrate no explicit waiver by the Dominican Republic of its sovereignty or jurisdiction in favor of the United States.

[14] Mr. Polanco submitted to the court an English translation of the decision from a lawsuit filed in the Dominican Republic by the PLD and joined by the Plaintiff. *See Dominican Liberation Party v. Dominican Republic*, Judgment TC/0000/21 (ECF 47). PLD litigated the lawsuit in the Dominican Republic all the way to an appeal in the supreme court – the Constitutional Court. *Id.* at 2.

[15] *See supra* note 12 (describing the five former government representatives not represented as part of the CEB, Dominican Republic Defendants, or the PLD defendant groups).

[16] The remaining individual defendants include the Aquino Defendants (except for the former government representatives *see supra* n.12), Unrepresented Defendants (same *see supra* n.12), and the four named

necessarily amenable to suit in the Dominican Republic. CEB Mot. Dismiss 18; Dom. Rep. Mot. Dismiss 30. In my view, the record on amenability to suit is stronger than that. Every represented party before the Court disputes that this is the appropriate forum, with the majority invoking FNC, and the Aquino Defendants relying on the state action doctrine, arguing that "[i]nvalidating the election of a foreign democratic nation is beyond this Court's authority." Aquino Mot. Dismiss 14. Moreover, to protect Mr. Polanco, my order of transfer will require necessary Defendants to accept the jurisdiction of the Dominican Republic.[17]

### 2) Plaintiff's Opportunity for Redress in the Dominican Republic

Finding that the Dominican Republic is an alternate forum, I must now turn to whether the forum is adequate. A forum court is only not considered an adequate alternative forum on the rare occasion "*where the remedy offered by the other forum is clearly unsatisfactory*." *Eurofins*, 623 F.3d at 161 (citing *Piper*, 454 U.S. at 255, n.22). A forum might be inadequate if the foreign court does not permit litigation over the subject matter of the dispute or if the Plaintiff can demonstrate significant legal or political obstacles to conducting litigation in the alternative forum. *Piper*, 454 U.S. at 255, n.22. *Piper* does not hold that the defendant has an affirmative duty to show that a remedy exists, only that the court may consider possible remedies in the alternative forum where evidence is presented. *Id.* (citing *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445 (D. Del.

---

individual defendants as part of the PLD Defendants – Temistocles Montas, Gonzalo Castillo, Manuel Emilio Galvan, and Eduardo Selman.

[17] I would reach this same result even if every individual defendant is not amenable to suit in the Dominican Republic, because the essential defendants are. A decision from the Ninth Circuit, *Ravelo Monegro v. Rosa*, is instructive. 211 F.3d 509 (9th Cir. 2000). The case involved several baseball players from the Dominican Republic who signed contracts to play baseball in the United States. *Id.* at 511. The players brought a suit in both the Dominican Republic and the United States against the scout that recruited them. *Id.* The Circuit rejected an FNC defense, because the *key* defendants were likely not amenable to suit in the Dominican Republic. *Id.* at 514. The opposite is true here, and at worst, only defendants on the periphery might be able to object to venue in the Dominican Republic.

1978) (denying FNC where *plaintiff's* affidavits showed a complete lack of legal remedies under Ecuadorian tort law)); *see also Eurofins*, 623 F.3d at 161 (rejecting plaintiff's argument that France was an inadequate forum because of its limited discovery rules).

Mr. Polanco incorrectly assumes that CEB has the burden to show that similar remedies exist in the Dominican Republic, arguing that it does not provide "practical guidance on how the Dominican Republic provides Plaintiff with an adequate forum similar to that of the United States." Pl. Opp. to CEB 9. In fact, CEB submitted an affidavit from a licensed attorney attesting to a remedy.[18] It provides in part that:

> The principle of responsibility requires the administration to be held responsible for any "harm caused to people's assets or rights resulting from the administration's conduct." This means that "authorities and their agents shall bear the consequences of their conduct in accordance with the law", including "compensat[ion] for any harm caused to their assets or rights as a result of the administration's illegal acts or omissions."
>
> Under this law, Dominican citizens, like Mr. Yomare Polanco, may sue governmental entities, like the Central Electoral Board, for compensation for any type of misconduct, including the alleged fraud and misrepresentations that Mr. Polanco alleges in his Amended Complaint.

*See* CEB First Medina Decl. ¶¶ 16-17 (citing CEB Ex. D, Law No. 107-13) (internal citations omitted).

Plaintiff further contends that the Dominican Republic does not have a common law or an exact equivalent to a civil RICO claim. But a foreign forum remains an adequate alternative even if the exact theory of liability is not available and the damages award might be different, as long

---

[18] Plaintiff also argues that Fabiola Medina – a licensed attorney in the Dominican Republic that Defendant CEB relies on for her assertions that the Dominican Republic is an adequate alternative forum – is not qualified to opine if the Dominican Republic is an adequate alternate forum because Ms. Medina is not barred in the United States and thus cannot compare the Dominican legal system to the United States legal system. Pl. Opp. to CEB Mot. 9-10. I find this argument unpersuasive. CEB relies on Ms. Medina's declarations to describe *Dominican* law and remedies. Defendant CEB, represented by attorneys barred in the United States, then uses this information to draw comparisons. Absent some colorable argument that that Ms. Medina's explanation of Dominican law is incorrect, which Plaintiff does not advance, this argument lacks weight.

as there is not a danger that the Plaintiff would be "deprived of any remedy or treated unfairly." *Piper*, 454 U.S. at 255. Mr. Polanco makes no such showing.

Mr. Polanco goes on to assert that the Dominican Republic's highest court already had an opportunity to hear his case and refused, dismissing it with prejudice for lack of jurisdiction. Pl. Opp. to CEB 12, Ex. 6 Legal Opinion, ECF 106-7 at 6. But, as CEB points out, the case brought in the Dominican Republic did "not concern Polanco's claim for compensation against the Board for the alleged misrepresentations that are the basis of the present suit, but a request [by PLD] for a vote recount, in which Mr. Polanco's appeal was inadmissible because he had not been a party to the underlying dispute before the Electoral Offices." CEB Reply in Supp. Mot. Dismiss 7, n.3 (ECF 107); *see also* Second Medina Decl. ¶¶ 8-11 (ECF 107-1). Significantly, the opinion of Mr. Polanco's legal expert omitted relevant paragraphs of the Dominican court's decision discussing why he lacked standing to file an appeal, specifically because he "was not a party to the proceedings that gave rise to the appealed decisions," which were filed by PLD. CEB Ex. I, ECF 107-5 at 2; Second Medina Decl. ¶10.

Because Mr. Polanco has provided no evidence that his legal remedies are entirely unavailable in the Dominican Republic, and Defendants have me their burden of proof, I conclude that the Dominican Republic is an adequate alternative forum for Mr. Polanco's claims.

### b. Level of Deference to Plaintiff's Choice of Forum

Because I found that the Dominican Republic is an adequate alternative forum, I must now decide how much deference Plaintiff's choice of forum is due. Ordinarily, there is a "strong presumption in favor of the plaintiff's choice of forum." *Piper*, 454 U.S. at 255. As such, a plaintiff's choice "should rarely be disturbed." *Id.* at 241. But that presumption "applies with less force when the plaintiff or real parties in interest are foreign." *Id.* at 255. Given that Mr. Polanco

is a U.S. citizen, Am. Compl. ¶ 11, he would ordinarily be entitled to strong deference as to his choice of forum.  He is, however, also a citizen of the Dominican Republic,[19] and the claims he seeks to litigate here do not just involve the Dominican Republic, but have as their core focus, the political and electoral systems of that nation.  As such, for purposes of the specific claims here, he is equally at home in both jurisdictions, and in my view his choice of forum is entitled to somewhat lesser weight than usual.

Regardless, whatever deference is owed may be overcome "when the private and public interest factors clearly point towards trial in the alternative forum."  *Piper*, 454 U.S. at 255*; see also Eurofins*, 623 F.3d at 161 n.15 ("In finding that the plaintiffs' choice of . . . forum is far outweighed by the burdens that [the] forum would impose on these defendants, the District Court balanced the relevant factors against the deference it had accorded [Plaintiff's] chosen forum.") (internal citations omitted); *Lacey*, 862 F.2d at 43 ("[T]he plaintiff's choice of forum should rarely be disturbed, *unless* the balance of factors is strongly in favor of the defendant.") (emphasis added). Even if I accord Mr. Polanco strong deference to his choice of forum, I find that public and private interest factors far outweigh his preference.

   c. **Public and Private Interest Factors**

Because I have found that the Dominican Republic is an adequate alternative forum, and assuming that Mr. Polanco is owed some level of deference in favor of his choice of forum, the next step is to "consider and balance several private and public interest factors that are relevant to the [FNC] determination." *Id.* at 43.  It is within the district court's discretion when selecting

---

[19] The Complaint pleads that Mr. Polanco "is a Dominican-born citizen of the United States", leaving some ambiguity as to the place of his birth. Am. Compl. ¶ 11. But Dominican law also recognizes *jus sanguinis*, citizenship by descent, and Mr. Polanco would in any case need to be a citizen to hold office. *See* CEB Ex. C, Law No. 136-11, art. 8 ("In order to be a candidate for deputy representing the Dominican community abroad, the following requirements are necessary: 1) Being a Dominican citizen . . .").

which private and public interest factors to weigh. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442-43 (3d Cir. 2017). As a result, the "list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Id.* at 443 (quoting *Van Cauwenberghe*, 486 U.S. at 528-29).

    1) Private Interest Factors

The relevant private interest factors include considerations such as the ease of access to relevant evidence; the availability and costs of bringing unwilling witnesses; the ability to view the premises if appropriate; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Eurofins*, 623 F.3d at 161 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). I conclude that these factors tilt decidedly in favor of the Dominican Republic.

Because Mr. Polanco primarily alleges wrong doings on behalf of the Dominican Republic government itself, a major political party operating in the Dominican Republic, a Dominican government agency, numerous former representatives of the government, and other Dominican Republic citizens with clear ties to the Dominican Republic political system regardless of their residency, it follows that much of the evidence will be located in the Dominican Republic. CEB Mot. Dismiss 19-20. Furthermore, there appears to be an ongoing criminal investigation in the Dominican Republic into events related to the 2020 election, further bolstering the notion that key evidence exists in the Dominican Republic. Am. Compl. ¶ 76. Even though Mr. Polanco is a U.S. resident and citizen, he was running for election to a seat in a foreign government and paying members of a foreign government's political party. Although Mr. Polanco alleges that the "torching" of the ballots in his favor occurred on U.S. soil, it was carried out by individuals and entities with strong ties to the Dominican Republic in connection with its elections. Some

substantial part of the evidence necessarily exists in the Dominican Republic, not the United States, and witnesses, even unwilling ones, necessarily have strong ties with the Dominican Republic. And CEB completes the certification of the election results in the Dominican Republic not in the United States, including the certification of the results for the First District.  *See* Second Medina Decl. ¶¶ 6-7 (discussing that the CEB certifies Dominican elections and issued a Resolution No. 68-2020 *from* Santo Domingo on the subject).  Moreover, as noted above, all represented defendants here deny that the United States is an appropriate forum.  In sum, the private factors do not strongly favor Plaintiff, and if anything, weigh in favor of transfer.

      2)  *Public Interest Factors*

The relevant public interest factors include: "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Eurofins*, 623 F.3d at 162 (quoting *Piper*, 454 U.S. at 241 n. 6).  The public interest factors weigh heavily in favor of litigation in the Dominican Republic, even more than the private interest factors.

I reject Mr. Polanco's assertions that this case is only "collaterally about the Dominican elections in the United States" and is really about "criminal activity perpetrated . . . on United States soil." Pl. Opp. to CEB 11.  To the contrary, this case is fundamentally about the validity of, and possible corruption related to, a foreign country's elections.  Dominican law will necessarily play a prominent role in resolution of the case.  And the Dominican Republic has a vital public interest in the outcome of this case, underscored by Plaintiff's prayer requesting that a United States court permanently prevent the Dominican Republic from holding an election on American

16

soil ever again.[20] Am. Compl. ¶ A. That relief would appear to contradict Dominican law, which guarantees representation to Dominicans living abroad. CEB Mot. Dismiss 20; Pl. Opp. to CEB, Ex. 1 Dom. Rep. Const..

Nor can it be said that the United States has a public interest in this case. This is not a product liability case involving a product designed and manufactured here, where there is a compelling interest in public safety. *See, e.g., Lacey*, 862 F.2d at 48 (noting that in a product liability case, the state where the product was manufactured has an interest in "deterring the manufacture of unsafe products within its borders"). Nor do the racketeering and bribes alleged implicate American markets or its financial system.

As such, on balance, Defendants have met their burden of showing that the private and public interest factors weigh heavily in favor of this case being tried in the Dominican Republic, outweighing the presumption in favor of Mr. Polanco's chosen forum.

## IV. Conclusion

For the reasons set forth above, this action is dismissed in its entirety on *forum non conveniens* grounds.

/s/ Gerald Austin McHugh
United States District Judge

---

[20] I do not reach the state action doctrine but note that it would separately present a formidable obstacle to this Court proceeding.